And we'll move to our third case this morning, which is Price versus the City of Chicago. Mr. O. May it please the court. My name is Thomas Alp. I represent the plaintiffs in this First Amendment challenge to the Chicago bubble zone law. As you know, our clients are pro-life sidewalk counselors. They attempt to engage abortion-minded women on the sidewalks of Chicago at the point that the abortion-minded woman is entering or close to entering an abortion clinic to make an abortion decision. And the purpose of our clients is to influence that decision on behalf of the life of the child in the mother's womb. The bubble zone ordinance adversely impacts our client's ability to communicate effectively with an abortion-minded woman on the sidewalks of Chicago in the sense that it requires any person within 50 feet of an abortion clinic entrance to maintain a distance of 8 feet and not to approach a woman without consent for the purpose of passing literature or a handbill or a leaflet to that woman. Counsel, can I ask you a question about Hill? McCullen didn't overrule Hill, and Hill seems to foreclose your claim fairly squarely, right? This ordinance isn't as restrictive as the one in Hill. We would disagree with that. And here's why. The Hill case, it was a Supreme Court case that upheld a Colorado statute that was passed in 1993. And the real question is, do the facts of Hill in that statute that justified the legislation in Colorado, are they the same facts or similar enough facts here in Chicago that a similar approval of the Chicago ordinance is required? This is an argument based on the narrow tailoring inquiry? Well, there's that, too. But this court in the Weinberg case and in the Granite City case, it requires that the government have, number one, an interest for regulating. Two, that there's evidence that supports the regulation, that the regulation advances the interest. Three, that the regulation is narrowly tailored to the interest. And four, that it leaves open, ample, alternative channels of communication. This is from the Ward test. And the Hill case applied the Ward test. But our point is, facts are different here. And we've alleged those different facts in our complaint at paragraph 30, where we say, hey, the situation in Chicago in 2009 is quite different than it was in Colorado in 1993. So this is on the narrow tailoring prong. So you're making the argument that the Third Circuit accepted in Rooney, saying that McClellan clarified or perhaps changed a bit what the required showing for narrow tailoring? That's exactly right. There's three elements. There's three ways that the law after Hill changed the principles that have to be applied by this court in this case. And I would urge you to look at your own case in the Norton case, which was the challenge against the panhandling statute in Springfield. In Norton, the initial panel approved the panhandling statute on the basis of the Ward case's emphasis on whether or not the government disagrees with the message of the speech. And the Ward case basically said, this is our primary consideration. If there's no evidence that the government disagrees with the message, we're going to consider that to be content neutral. That was changed in Reed in 2015. Reed said, we don't care initially whether or not there's disagreement or agreement by the government with the underlying message of speech. We look on its face to the statute to see whether it … But Reed didn't overrule Hill on the content neutrality point. Well, this isn't a question of overruling or not overruling. We didn't raise Hill. In our arguments, the city did. The city has absolutely no evidence to support its position with respect to the Chicago ordinance. It simply said, hey, court, go look at Colorado. And all of our justification is located there. But that's before even the Federal Place Act was passed. Everything's different after that. If you look at the legislative history of the Colorado statute, you'll find that there was mass demonstrations, violence, confrontations. All that changed with the Federal Face Act that was passed in 1994. Right. That might be relevant to the narrow tailoring inquiry and whether there's an actual fit here between the governmental interests at stake and the means that the city of Chicago has chosen. I agree. But it doesn't really change the reality that neither Reed nor McCullen overruled Hill, which is binding precedent for us. It's not binding precedent. You don't have to overrule Hill either. Are you saying that every time a municipality or city passes such an ordinance, it's challengeable on the grounds that, well, that was New York, this is Chicago, or that was Denver, this is Milwaukee? Not all the time. But aren't you really arguing, though, that in order to determine whether the ordinance is valid, you have to relitigate the circumstances that led to its enactment? Not all the time. If you look at this circuit's precedents, you'll find that in the Granite City case, the court said, this is Judge Kahn, said, hey, listen, you guys are telling us that there's plenty of other statutes out there that govern handbilling and all the effects of handbilling. Well, we want to know what your problem is here in Granite City before we're going to uphold your handbilling statute here. We need evidence to show that your regulation pertains to an interest that you have. So that's a perfect example of an exception. The U.S. Supreme Court, in the Renton case, said you can, in terms of secondary effects, you can go and look at other cities' evidence to support the secondary effects of, in that case, it was an adult-oriented business. The secondary effects were prostitution around it, which has nothing to do, regulating that has nothing to do with speech in the adult-oriented business. But the court did say, hey, the evidence has to be relevant to your own regulation. And in this case, the city hasn't come up with any evidence. All they've done is say, hey, our justification is in Colorado. Counsel, is it your position that the city would have had to develop a legislative record before it enacted the ordinance showing why this is narrowly tailored, or is it possible for the city in the context of litigation to explain why it was narrowly tailored after the fact? Well, you know, I believe that the city has to have evidence of its regulatory interest. The Turner case, for example, the U.S. Supreme Court says that there has to be an actual real interest to be served by the regulation. So can they come back after the fact and show that? Well, I suppose they could try, but how can they go back to 2009 and reinvent the wheel? They didn't do it then. Most ordinances have preambles. But does the ordinance then become invalid as the circumstances change? I mean, do you constantly review the circumstances on the ground to see if you need such an ordinance? Isn't a facial challenge really to say that the ordinance is constitutional? And if the city concludes that this type of restriction is appropriate, they get to make that call? The city does not have that scope of authority. It has to show, and as you said, Judge Sykes, there has to be evidence that, in McClellan especially, that the city tried alternative means of regulation that were less restrictive on speech. And here there's no evidence they did that. But, counsel, let me ask you a question that builds on Judge Griesbach's point. Let's imagine that in 2000, let's imagine an ordinance that predated the Federal Face Act. And at the time, say, one could defend it. It might lose, and let's imagine that our court might say, or did say, that such a statute was constitutional because it was narrowly tailored at the time. But then the situation on the ground changes, we have face, maybe protests have died down, and a new plaintiff comes and challenges it and says, now this challenge is, this ordinance is facially unconstitutional. What's your position then? Would it be? If the need went away, it might be difficult to prove that. Because after a statute's been passed, what's caused the lack of the problem? Maybe it's the statute. Our position is that there was no problem before the statute was filed in 2009. There was no problem. And that's what we've alleged in our complaint. The Graff case, which, you know, the district court basically shoved the burden of proof on us by saying, you guys got to come in here and you have to show that the interests are different. And we did that by saying the city had no interest. It had no real interest in regulating. And so therefore, you know, we've done our burden, met our burden, and the burden then shifts to the city. How do they meet that burden? They have to show some evidence. They at least have to show that the circumstances in Colorado obtained in Chicago, don't they? They can just point to any statute, any ordinance around the country. You know, this is a very contentious area. It's the First Amendment. And in the First Amendment, courts, as I mentioned the Turner case, courts say, no, we're not going to just rely, you know, without exception. But is there any other case you can cite where the same ordinance was upheld as constitutional in one area but not for another, in one city but not for another city? I think there are plenty of them. Can I come up with one? You know, maybe I can't right now. I'm sorry. But I think it's, I mean, if you look at the Weinberg case here in the Seventh Circuit case and the Jorgeina case, you'll find that the court, it doesn't just rubber stamp. And I would quote Judge Kahn who said, we don't care if there's loads of ordinances out there. We want to see evidence here that there's a real problem that you're addressing. What's the problem that we're addressing here in Chicago with the Bubble Zone Ordinance? There isn't any problem. There hasn't been any problem. The city hasn't pointed to any. We, you know, I take the train down here to work every day. And when I'm in the train, there's a silent car. Everything is quiet. I don't have a right to talk. Why? It's not a public forum. But I get off at Ogilvie and I walk to my office on the public sidewalk, and I get accosted all the time by panhandlers. And why don't our clients get as much respect as those panhandlers? Isn't the very fact that your client claims that the ordinance prevents her from engaging in the activity that she wishes to engage in, that's what the ordinance is targeting, isn't it? Exactly right. And the Supreme Court has said that's fine. It said it had an interest in protecting the unwilling listener in Colorado. Why? Because they were massive. Did it limit it to the fact that there was threats to people? Or was it simply trying to protect people that choose abortion from hearing things they don't want to hear? The emotion and all the rest that goes with it. The reason the decision is so controversial is because it attempted to protect unwilling listeners from unwanted speech. Right? That's very, very controversial. Yes. That's right. It's not one we get to decide, though. Well, what did McCullen say? McCullen said, we will not consider content neutral. He said, to be clear, we will not consider content neutral. So this is your argument that McCullen overruled. McCullen overruled that aspect of Hill. Okay. That's a different argument than your argument, isn't it? That aspect of McCullen is very difficult to reconcile with Hill. But the court specifically avoided overruling Hill by deciding the content neutrality argument as it did and putting the reversal on the narrow tailoring aspect of the inquiry. And the cert grant in McCullen specifically had Hill teed up for overruling, and the court dodged it. As you know, Justice Scalia said, hey, listen, if you don't accept a government interest in protecting an unwilling listener from speech on the public sidewalk, then you've essentially overruled Hill. Maybe you didn't even know he did that, but you have. I didn't record what he was doing. Well, exactly. And it didn't have to overrule Hill. You know why? Because the buffer zone in Massachusetts was content neutral. It forbade all speech. So it didn't have to go into whether or not . . . So even a panhandler couldn't enter. That's right. But here a panhandler can enter. Right. A panhandler can, but a . . . Somebody selling Girl Scout cookies. But a sidewalk counselor can't. Right. But a sidewalk counselor can't. Okay. So, and, you know, the . . . You're into your rebuttal. Okay. Thank you. Thank you. Ms. Lose. Ms. Lose. Good morning. May it please the Court. The Supreme Court in Colorado v. Hill decided the precise constitutional issues raised in the facial challenge in this case. The Court rejected each of the same First Amendment and due process challenges to the same type of eight-foot no-approach zone. The Supreme Court has not overruled Hill. This Court is bound to follow that precedent, and the judgment of the District Court should therefore be affirmed. We cite several Supreme Court cases, beginning with Rodriguez and Tennant v. Doe and a number of others, where the Supreme Court has made clear that when there's a Supreme Court decision directly on point, it controls the lower court's decision, period. It's the Supreme Court's prerogative to overrule decisions, and that principle applies here. That's Agostini. Agostini, yes. It's the primary case that does not permit the lower courts to predict that later Supreme Court developments have overruled a binding precedent. That's correct. And thereby disregarded themselves. Counsel, can you address this narrow, you know, in light of this, in light of our position as a lower court, you know, and Hill, foreclosing arguments about the interests at stake. Can you address this narrow tailoring point? Well, here Chicago City Council modeled its ordinance after the one that had been closely examined by the highest court and upheld as constitutional, both as content neutral and as narrowly tailored.  It's not statewide, and it actually covers a smaller zone, a 50-foot zone instead of the 100-foot zone in Colorado. With respect to this idea that we need evidence, as the court held that Massachusetts did in McClellan, well, that's because in McClellan there was not a narrowly tailored restriction as the court held the 8-foot no approach zone is here. We rely on the same evidence as Hill. The court has long recognized that it is permissible, the court held in Renton versus Playtime Theaters, that the city does not have to go out and reinvent the wheel. It can even, you know, anticipate problems that will arise, and it can legislate based on studies and the experience of other jurisdictions. But that secondary effects line of cases is a little bit different, right? Right. I mean, here, you know, you're opposing counsels arguing that there was not the same record in the case of violence of mass protests that FASE had not yet been enacted when Hill was decided. Are those material changes that a city would have to decide? I don't mean to apply the secondary effects analysis applies, but in that same decision in Renton, the court held that so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem the city addresses, that it's okay to rely on another municipality's. The problem here is that we have no evidence. This case was dismissed on the pleadings, and we have detailed allegations in the complaint that there is no real problem being addressed here. And so that takes this outside of the narrow tailoring analysis that the Hill court engaged in. We do have allegations from the plaintiffs that they want to engage in the same kind of sidewalk counseling that was squarely at issue in Hill. Right. But Hill was based on a very well-developed summary judgment record, and also legislative findings, as I recall, that are absent here. And we have colorable allegations that the facts on the ground are different now than they were in Hill. So why doesn't that call for an evidence-based examination of whether there's the required close fit between this bubble ordinance and the problems that it seeks to eradicate? The facts relating to the sidewalk counseling that the court dealt with in Hill aren't any different here. That's the exact kind of conduct that the plaintiffs want to engage in here and that the court in Hill said. Well, no, the summary judgment record in Hill had evidence of very aggressive confrontations, not the kind of peaceful. And yet the court's analysis of the 8-foot no approach zone zeroed in on the kind of harm that would occur even when these sidewalk counselors engage in their sidewalk counseling. That was the primary focus of the court's whole opinion. It didn't deal with the same kind of conduct that the plaintiffs are trying to get at here. Is it your view that Hill doesn't require violence or even a threat of violence, that the counseling, the intrusion is enough, the unwanted intrusion at that moment, at that place is enough to justify the restriction on free speech? It is the unwanted approach that is practically unavoidable and non-consensual at a point. It's not just the approach, though, that anyone can approach. It's talking about abortion that is really actually talking about counseling. Counseling, education. Educational. Any calm discussion on counseling or education. But it's important to note that none of those, as in Hill, none of those are prescribed here. The speech is not ruled out. A sidewalk counselor has the option. You can ask for directions? The sidewalk counselor can talk about their views against abortion from a standstill position, even right next to the door, or from an 8-foot remove, can ask for consent to come closer. But what is forbidden is this close-in approach for those purposes that the court held in Hill amounted to importuning and dogging and harassing of the kind that was a legitimate interest that the state could legislate against and that the 8-foot no approach zone was narrowly tailored to that. Because you were right in on the combination of that kind of speech with this close-in, practically unavoidable conduct of approaching. So do you think, then, that Bruni, the Third Circuit decision, is wrong insofar as it says that McClellan, while not overruling Hill, clarified that the narrow tailoring requirement has to be reexamined and that you can't have a copy and paste and assume that a content-neutral regulation will automatically be constitutional in a different location? Well, if you have... In McClellan, what I would say that in McClellan is... McClellan once had this similar, I believe it is a 6-foot no approach zone, and abandoned that for a much broader prescription. And so if you have something that reaches that broadly, no speech was allowed at all within the 35-feet buffer zone in McClellan. And when you have that, you don't have a narrow tailoring. And when the government's excuse is going to be, we've tried other things, we've tried laws about harassing and following, and they just haven't worked, that the court said in McClellan, you have to show that with evidence. And it hadn't showed. This 8-foot no approach zone is one of the more narrowly tailored laws that Massachusetts had abandoned. So are you saying that if an ordinance is at least as restrictive as one that's been upheld in the past, and the city doesn't have to reengage in figuring out whether there's a fit, whether it's narrowly tailored, what problem it's addressing, et cetera, but if the city goes bigger than anything that's been previously held constitutional, then the city does need to engage in an examination? Then it may need to. It will need to be narrowly tailored itself. And in McClellan, the state went so broad that it needed to show that there the law enforcement wanted a brighter line, but that was just too broad. It was going to restrict too much speech. So you can copy and paste? I would say that's what Renton holds, is when you have, I mean, the kind of conduct that the plaintiffs want to engage in here is no different than the sidewalk counseling that was at issue in Colorado. It isn't any different. And so, yes, when you see other jurisdictions addressing problems, and you can rely on their evidence and their experience and on the Supreme Court decisions that squarely decide the same issue. In fact, it's responsible government to model a law after one that has been fully analyzed by the Supreme Court and upheld. And so we submit that this court need not address the cases after Hill since none of those overruled Hill. There's nothing in McClellan saying that the court overruled Hill, and there's nothing in Reed, the other case opposing counsel relies on, to say that Hill is overruled. It is the Supreme Court's prerogative alone to overrule one of its decisions. Reed is very hard to reconcile, or Hill is very hard to reconcile with Reed. It really worked a sea change in the legal landscape for content neutrality. Actually, Hill involved a signed ordinance that treated signs differently based on the subject. Reed. Reed. Reed. Did I misspeak? You said Hill. I'm sorry, Reed. Reed involved a signed ordinance that treated signs differently based on the topic. I'm not talking about the facts. I'm talking about the legal analysis. Clearly, this court said very clearly that if the enforcement authorities are required to consult the content of the speech to determine whether there's a ordinance or statute in question, the law in question is content-based on its face. And it seems to me that is squarely in conflict with what Hill holds about the content neutrality inquiry. Well, Reed said a lot more about why the statute at issue there was content-based, and it had to do with the fact that it was subject-based. It was topic-based. It was viewpoint-based. It doesn't say that governments can't categorize at all, categorizing based on signs or picketing is categorization. The ordinance at issue here does not categorize based on subject. Any subject, it covers all subjects, and it does not categorize. No, it doesn't cover all subjects. It only covers oral protest education or counseling. It doesn't cover a panhandler. It doesn't cover someone who's selling something. It doesn't cover someone who's conducting a political poll. If it amounts to education, the subject of the education is irrelevant. What about the hypotheticals that I just gave you? It doesn't cover those approaches, approaches by persons who are engaged in that speech. If those amount to education or counseling, which I believe some of those would, the court in Hill said that. A car salesman, for example. Panhandling? I mean, just do a thought experiment here. Pretend this is the Supreme Court. How would you distinguish Reed from Hill? Reed from Hill? How can you possibly reconcile those two on the content neutrality inquiry? Well, I think the court was very clear in Reed that what was at issue there was a subject matter distinction. Was the sign political? Was it ideological? Was it directional? And if it was, then it was content-based. But the court in Hill said that was based on the face of the statute, and the court in Hill looked at the face of the statute of the eight-foot no approach and said this is not content neutral, in part because it is about content. It is about conduct as well. This is speech when combined with conduct that is squarely at issue in Hill. It's a close in no approach zone. For example, no topic of speech is ruled out, as I said before. A speaker can speak from any point in front of a medical facility that he or she wishes. It prescribes only certain types of speech, oral protest, counseling, and education. It is a modest restriction on those speeches when it is accompanied with a close in approach, a close in unavoidable non-contentual approach. Yes, but it's clearly content-based because the enforcement authority would have to determine what the person who engages in that approach is talking about. In Hill, the court held that. If they're talking about panhandling, if they're talking about taking a political poll, if they're talking about selling something, they haven't violated the ordinance.  merely to have to look at. Right, and I'm asking you to tell me how that possibly survives what Reed said about the content neutrality inquiry. Reed did not address this point. There was a careful analysis in Hill. Just the mere fact that one needs to look at the content to determine if a rule of law applies was squarely rejected in Hill, and Reed said nothing about that analysis. Both Reed and McClellan said exactly the opposite. Reed and McClellan did not address the court's careful analysis in Hill and certainly did not overrule it. So it's just an argument based on vertical stare decisis, not a merits argument. No, it is a merits argument. We believe that Reed and McClellan are distinguishable from Hill. They're very different types of ordinances. But in any event, yes, it is a stare decisis argument. It's the Supreme Court's prerogative alone to address this question of whether or not Reed and McClellan amounts to that sort of change. And it has not, the court has not done so. It has not overruled Hill. So therefore, the district court properly dismissed the plaintiff's complaint and we ask that that judgment be affirmed. Thank you. Mr. Ohl. I'd like to direct your attention again to the Norton case because in the Norton case, this circuit applied Reed. And the Reed case reversed the Ninth Circuit based upon Ward. And the Ninth Circuit based its decision on Hill. And the Supreme Court in Reed noted that fact. And this court didn't go back and say, oh, well, this is going to conflict with Hill. Therefore, we can't do this. It applied the current Supreme Court precedent in Reed. And that was preceded by the court's decision in Sorrell, which said that when a proscription on speech for the purpose of promotional activities, i.e. marketing, was content-based, that's exactly what the Reed court said in its decision, saying a court, a regulation is on its face content-based if it regulates by the purpose or intent of the speech. And in this case, in the Chicago ordinance, it very explicitly says you cannot approach within eight feet if your purpose is to counsel, educate, or orally protest. So I agree with you that the Reed case is directly on point. And the circuit has to follow Reed. It can't. And so is Hill? The whole thing, in my opinion, is a red herring. Hill didn't enunciate any particular rule of law, like the Rodriguez case did. It was an application of law to circumstances. In any case involving the application of law to circumstances, that result can change if the facts change, and they're different here in Chicago, or the law changes as it has occurred. So, you know, Your time has expired. So you'll have to wrap up. I would like to close by saying that, you know, that Justice Scalia, he didn't like the Hill v. Colorado opinion, as you can tell by reading his dissent. And he said in that opinion, he said, if this court goes down the road and starts to regulate speech by focusing on the unwilling listener, the first amendment will become a dead letter. Yeah. That view did not prevail. Right. In the McClellan case, in his concurrence, in his conclusion, he said the same thing. And so my recommendation is that we honor his memory by saying, yeah, Justice Scalia, you were right. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.